```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                Plaintiff,

          v.                           16 CV 2733 (RJS)

KHALED KAL BASSILY,
                                       Telephone Conference
                Defendant.
------------------------------x
                                       New York, N.Y.
                                       February 17, 2017
                                       11:30 a.m.
Before:

          HON. RICHARD J. SULLIVAN

                                       District Judge




          APPEARANCES


THOMAS A. BEDNAR
SARAH L. ALIGEIER
     Attorneys for Plaintiff


AKIN GUMP STRAUSS HAUER & FELD LLP
     Attorneys for Defendant
BY:  ROBERT H. HOTZ, JR.
     M. CHRISTINE SLAVIK
     KATE L. POWERS
```

1           (Case called)

2           THE COURT:  Good morning to each of you.  The reason I
3   asked for this conference call is I know that this case had
4   originally been assigned to Judge Torres, who referred it to
5   Magistrate Judge Ellis, and discovery has been proceeding under
6   Judge Ellis's discovery schedule and case management plan.

7           I typically don't refer to magistrate judge's
8   discovery; I like to keep it myself.  As I looked at Judge
9   Ellis's schedule, it seemed to me this is a long schedule.  I
10  don't really know exactly what is going on, and I'm deciding
11  whether I want to withdraw the referral and take it myself or
12  whether things have already progressed to the point where that
13  is not worth doing.  That is the purpose of this call.

14          I have great respect and admiration for Judge Ellis.
15  It is nothing personal.  I just like to do my own discovery.
16  Where are we at with Judge Ellis?  Is he involved in this
17  process with you?

18          MR. BEHAR:  Your Honor, we appeared in front of Judge
19  Ellis for an initial scheduling conference, introduced
20  ourselves and the case.  Once our scheduling order was entered,
21  we have been able to proceed with discovery without any issues
22  that we haven't been able to resolve among ourselves.  So we
23  have not had to enlist the court for anything.  We have not
24  appeared in front of Judge Ellis since that initial scheduling
25  conference.

1          THE COURT:  That helps.  Thank you.  His scheduling
2  order doesn't use hard dates.  It is dates triggered or pegged
3  off of the date of his order.  I generally give hard dates so
4  everybody knows what is happening and when it is happening
5  without having to do math.
6          MR. BEHAR:  Your Honor, we have created an annotated
7  version of that that Mr. Hotz and his team created.  We have
8  provided that to Judge Ellis, and we can send that to chambers,
9  perhaps should have done that already.
10         THE COURT:  Tell me, when does fact discovery end
11 according to your annotated version?
12         MR. HOTZ:  March 15, 2018, I believe, your Honor.
13         Tom, is that your understanding?
14         MR. BEHAR:  Yes.
15         THE COURT:  March 15, 2018.  That seems like a long
16 way away.  You're optimistic.  We might not even be alive by
17 then.  There may be a giant meteor that takes us out.
18         MR. HOTZ:  I'm confident we will by alive by them.
19         THE COURT:  The Mayan calendar might suggest
20 otherwise, Mr. Hotz.
21         MR. HOTZ:  Your Honor, if I may be heard briefly on
22 this?
23         THE COURT:  Sure.
24         MR. HOTZ:  I would like to explain why from our
25 perspective I think the current schedule is more than

                              (212) 805-0300

1  reasonable to tell you what is proceeding apace.  As your Honor
2  is well aware, the amended complaint contains new allegations
3  and new customers, and we are moving full steam ahead through
4  the discovery process right now.
5      We have a vendor engaged.  We have 7 million pages of
6  discovery.  We received another bunch of discovery, which is
7  smaller, to be clear, but by my count included approximately 70
8  FBI 302s.  We also received supplemental disclosures from the
9  SEC.  We expect to be filing our own supplemental disclosures.
10     At least from what I have seen, your Honor, I think
11 there are a number of issues that make this case unique that
12 require discovery.  I envision there will be substantial
13 discovery from third parties.
14     As Mr. Bednar and I indicated in the letter he
15 submitted to the Court, I think there will be a substantial
16 amount of third-party discovery from what I will call
17 colloquially the customers, the entities that engaged
18 Convergex, many of whom, as we indicated in our letter, would
19 require letters rogatory and a process around that.  Mr. Bednar
20 and I have set up proposed dates in the proposed letter to meet
21 and confer around and to set up a schedule to do that.  That
22 will take considerable time.
23     In addition, your Honor, we have again an issue which
24 is critically important for our defense, which is the issue of
25 the prices the clients received and the execution they

1  received.  I have set up a meeting with Mr. Bednar for March
2  3rd to go to the SEC's office and review the GPRO system, which
3  as I understand it would contain the trade information from the
4  Bermuda affiliate that would reflect the taking of the TP or
5  spread that is at issue here.
6      I don't want to prejudge that, but from what I
7  understand, this is a very complicated system.  I have
8  requested a copy from the SEC.  Mr. Bednar doesn't have another
9  copy.  I expect one of the things I will be requesting from
10 Convergex is that data.  Without previewing it or prejudging
11 it, I think that is a very complicated and massive amount of
12 data that has to be reviewed and analyzed.  I think that is
13 also going to require experts, as I indicated.
14     Lastly, your Honor, as I also indicated, there is
15 likely to be significant expert testimony both on this data
16 that I just mentioned but also on the transitions in the market
17 generally, as well as materiality, and also, as I mentioned in
18 the argument on motion to dismiss, disgorgement.
19     There is quite a lot to be done, your Honor.  We are
20 moving expeditiously and doing all we can reasonably do to get
21 this done as quickly as possible.  As Mr. Bednar indicates,
22 have had an ability to work through our differences and have
23 had no need to enlist Judge Ellis.
24     THE COURT:  Do you have an opinion as to whether I
25 should withdraw the referral and take this over myself?  That's

1  a tough question to ask a lawyer.  Maybe I shouldn't ask that.
2  Do you have any objection to it?
3         MR. HOTZ:  Your Honor, I have no objection to your
4  withdrawing the referral and overseeing the discovery process
5  yourself.  I would be more than happy to have your Honor
6  preside over whatever discovery issues we have.
7         THE COURT:  Tell me about expert discovery.  I'll come
8  back to the SEC in a minute.  Expert discovery will consist of
9  what?
10        MR. HOTZ:  Your Honor, it is difficult for me to be
11 more precise than I was, but I envision an expert that is going
12 to have to go through and analyze the GPRO data because I think
13 an issue that is squarely at issue in the case is the amount of
14 spread, the spread that was taken.  We are going to need to
15 have an expert go through that data and analyze that.
16        I also envision an expert more broadly on the question
17 of transition management, what transition management is and the
18 types of considerations that go into a customer's decision to
19 pick a specific transition manager.  Also on that score,
20 relatedly, I think there would be expert testimony similar to
21 that in the <u>Litvak</u> case, which no doubt your Honor is familiar
22 with, on the issue of materiality here.
23        Lastly, as I think your Honor described it in an oral
24 argument on the motion to dismiss, an expert which would
25 effectively be on the issue, assuming the worst, of

1    disgorgement.  You called it I think a damages expert, but I
2    view it as a disgorgement expert.
3              Those would be in broad strokes the areas for expert
4    testimony.
5              THE COURT:  Let me ask the folks at the SEC if they
6    have a view or an objection to my taking over the discovery
7    stage of this and if they have thoughts about expert discovery
8    and the timetable here.
9              MR. BEHAR:  Your Honor, no objection to the Court
10   taking over management of discovery.  As to the overall
11   schedule, given the number of likely depositions and the fact
12   that some of those will be overseas and might involve use of
13   letters rogatory, we think the overall schedule is reasonable.
14             I had hoped to get through the litigation with far
15   fewer types of experts than what Mr. Hotz is indicating he will
16   pursue.  That may cause me to go back to the drawing board to
17   make sure that we have enough expertise.  I think the SEC is
18   likely to have one or two experts on general broker-dealer
19   operations and considerations in the transition management
20   industry.  I don't think we are going to cover as much of the
21   waterfront as the defense, but we will have at least one
22   expert.
23             THE COURT:  The plan is March 2018 for fact discovery
24   when?  June or July for expert discovery?
25             MR. HOTZ:  June 15th, 2018, your Honor, according to

1    the annotated version of the order, we have to June 15, 2018.
2    That is in paragraph 7(a), I believe.
3           MR. BEHAR:  Right.  Your Honor, we have that
4    envisioned as 30 days after the end of fact discovery all
5    expert reports are due at the same time, 30 days after for all
6    rebuttal reports, and within 30 days of that we would finish
7    depositions of those experts.  I still think that that is
8    realistic.
9           THE COURT:  Did Judge Ellis schedule a post-discovery
10   conference date or anything like that?
11          MR. BEHAR:  Not with the Court, but a meet-and-confer
12   between the parties 30 days before the close of fact discovery.
13          THE COURT:  What I am going to ask you folks to do is
14   send me the document that you have been referring to.  Also
15   take a look at my template case management plan and scheduling
16   order and see if you think that you can plug in your annotated
17   arrangement into mine.  If you think you can't, just tell me
18   that.  But if you think that you can and if you have to add
19   things, add things; I don't mind that.
20          I'm contemplating doing a different case management
21   plan that more or less tracks my standard order tweaked as
22   needed, because this is not a typical case by any means.  Then
23   also what you have been referring to today so I can get a
24   better handle on the discovery.  That is I think the direction
25   I'm headed in.

1        I'm probably going to amend the referral, have the
2   referral to Judge Ellis go forward only with respect to
3   settlement, which is what I typically do with magistrate judges
4   in my cases. Have you thought about when you would be in a
5   position to talk about settlement?
6        MR. HOTZ: Your Honor, in the letter we jointly sent
7   you, Mr. Bednar and I envisioned that we would have discussions
8   and meet and confer on the issue of settlement on April 19th
9   and on June 30th. I think April 19th would be premature to
10  involve the magistrate, at least from my perspective. But it
11  may well make sense on June 30th to involve Magistrate Judge
12  Ellis, from my perspective, just given the volume of discovery
13  here.
14       THE COURT: Mr. Bednar?
15       MR. BEHAR: That sounds reasonable.
16       THE COURT: Let's do that. If you can within a week
17  get me a copy of what you have been referring to and maybe a
18  crack at trying to plug into my standard template the
19  agreements that you have got in place, that will allow me to
20  know whether it makes sense to do this. I'm inclined to amend
21  the referral.
22       MR. BEHAR: Yes, your Honor.
23       MR. HOTZ: Yes.
24       THE COURT: That's what I wanted to chat about. Is
25  there anything else that was on anybody's mind?

1    MR. BEHAR:  Not for the SEC.
2    MR. HOTZ:  Not regarding this matter, your Honor.
3 There are many things on my mind, but not on this.  Always nice
4 to speak to you and Tom.
5    THE COURT:  Thanks a lot.  If anybody needs a copy of
6 this transcript, which I doubt, if you want to, you can take
7 that up with the court reporter Mr. Murray through the website.
8    (Adjourned)